UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VALERI DEVERE, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-12-3234 |
| | § | |
| FORFEITURE SUPPORT ASSOCIATES, L.L.C., | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is defendant, Forfeiture Support Associates, L.L.C.'s ("FSA") motion for summary judgment. Dkt. 17. FSA seeks summary judgment on plaintiff's sexual harassment and retaliation claims. After considering the motion, response, record evidence, and applicable law, the court is of the opinion that the motion should be GRANTED.

**I. BACKGROUND**

Plaintiff was employed by FSA, which provides contract staffing and support services to the Department of Justice.[1] Plaintiff began her employment with FSA in 2004 and performed services for Immigration and Customs Enforcement ("ICE") as a Records Examiner Analyst.[2] William Griffin was her immediate supervisor at FSA, although he was stationed in Chicago, Illinois.[3] Plaintiff's daily assignments were provided to her by ICE Special Agents ("SA").[4]

From 2004 to November 2010, Senior Special Agent ("SSA") Martin Schramm supervised

---

[1] Dkt. 24, Ex. 1.

[2] *Id.*

[3] *Id.* at Ex. 3, Deposition of William Griffin ("Griffin Dep.") at pp. 6-8.

[4] *Id.* at pp. 10-14.

plaintiff's work at the ICE office in Houston, Texas.[5] During that time, plaintiff received exemplary performance ratings.[6]

In October 2009, plaintiff alleges that she was sexually harassed by SA David Harrison.[7] Specifically, she came to work with a bandaged finger, and SA Harrison asked her how long it had been since her husband passed away.[8] When plaintiff responded that it had been over a year, SA Harrison stated: "well, that explains it. Your husband is dead. You've not had sex in over a year and you expect us to believe that you broke your finger in a door?"[9] Plaintiff reported this incident to ICE officials and FSA Human Resources.[10] Plaintiff, however, did not report the incident to her immediate supervisor, Griffin.[11] Upon reporting this incident, plaintiff testified that ICE officials and FSA were very supportive and helped her prepare her EEOC complaint ("EEOC Charge") in December 2009.[12]

Plaintiff's EEOC Charge was dismissed on December 8, 2010 following a settlement with ICE.[13] The settlement agreement required SA Harrison to take sexual harassment training, avoid

---

[5] Dkt. 24, Ex. 2, Deposition of Valeri Devere ("Devere Dep.") at p. 28.

[6] Griffin Dep. at pp. 17-19, Exs. 5-7.

[7] Devere Dep. at pp. 58-59.

[8] *Id.*

[9] *Id.*

[10] Devere Dep. at pp. 73-75, 93.

[11] *Id.*

[12] *Id.* at p. 73.

[13] Devere Dep., Exs. 10-11.

walking near plaintiff's office, and relocate his office to the computer forensics lab.[14] Following the settlement with ICE, SSA Steven Greenwell replaced SSA Schramm as plaintiff's on-site supervisor.[15] Additionally, SA Kathy Ransbury moved into plaintiff's group at that time. Plaintiff alleges that SSA Greenwell and SA Ransbury were close personal friends with SA Harrison.[16] On this basis, she contends that SSA Greenwell and SA Ransbury began fabricating performance issues in retaliation for her EEOC Charge.[17]

Specifically, SSA Greenwell complained that plaintiff was reluctant to perform certain tasks and persistently questioned whether the contract between FSA and ICE required her to do certain assignments.[18] SSA Greenwell contacted Griffin in early December 2010 to discuss these problems, and met with plaintiff thereafter to discuss her job duties.[19] Plaintiff believed that this was a productive meeting with SSA Greenwell, but he maintained that plaintiff's poor work performance continued, including complaints about being asked to do "agent's work" and clerical tasks.[20]

Around this time, plaintiff also conferred with Griffin about her job assignment and concerns that she was being asked to perform non-contractually related tasks that she had not been asked to

---

[14] *Id.*

[15] *Id.* at p. 28.

[16] Dkt. 24, Ex. 1; Devere Dep. at p. 197.

[17] *Id.*

[18] Griffin Dep. at pp. 15-23.

[19] Devere Dep. at pp. 171, 211-12.

[20] *Id.* at p. 212.

perform in the past.[21] According to plaintiff, she was previously instructed by FSA not to perform job duties not authorized under the contract.[22] In this regard, plaintiff believed she could only question the ICE supervisor or Griffin regarding her job duties under the contract.[23] Griffin assured her it was appropriate to ask those questions.[24] However, Griffin informed her that she should perform the tasks requested of her by the agents.[25] He was concerned that a long time employee, such as plaintiff, was unsure about her job duties and thought that plaintiff was unable to accept the change in management.[26] Plaintiff maintains she never refused any work assignment,[27] but admits she questioned whether she should perform certain tasks.[28]

Griffin testified that in January 2011 SSA Greenwell was still having the same problems with plaintiff's performance.[29] SSA Greenwell expressed that plaintiff's ongoing complaints caused a disruption at the office, created more work for the other analyst, and caused agents to avoid asking her to do certain tasks.[30] Griffin contacted plaintiff on January 20, 2011, regarding SSA Greenwell's

---

[21] Dkt. 24, Ex. 1.

[22] *Id.*; Griffin Dep. at p. 16.

[23] *Id.* at p. 17.

[24] *Id.*; Dkt. 24, Ex. 1.

[25] Devere Dep. at p. 196.

[26] Griffin Dep. at pp. 25-29, 96, 148.

[27] *Id.* at pp. 17, 24-28.

[28] Devere Dep. at pp. 182-83, 194-95.

[29] Griffin Dep. at pp. 25-26.

[30] Devere Dep. at pp. 130-134, 249-253.

concerns.[31] Griffin regarded this as "formal counseling."[32] He was still unaware that she had filed an EEOC Charge.[33]

One week later, plaintiff informed Griffin about her EEOC Charge and her concern that SSA Greenwell was retaliating against her by fabricating work performance issues.[34] She also informed Carol Hauser in FSA's Human Resources Department about her retaliation concerns.[35] Plaintiff maintains Griffin did not investigate her concerns about SSA Greenwell.[36] However, Griffin testified he conferred with SSA Greenwell regarding the EEOC Charge and the settlement agreement.[37] SSA Greenwell confirmed that the settlement terms were being followed.[38]

Griffin visited the Houston office in April 2011 to address the continued complaints by SSA Greenwell regarding plaintiff's performance.[39] He advised plaintiff that she needed to cooperate and respond appropriately to requests for assistance.[40] Plaintiff's 2010 FSA Performance Appraisal was completed on May 20, 2011, and Griffin noted these concerns.[41] In her portion of the appraisal,

---

[31] *Id.* at pp. 207-08.

[32] Dkt. 17, Ex. E.

[33] Devere Dep. at pp. 207-08.

[34] Dkt. 24, Ex. 1.

[35] *Id.*; *id.* at Ex. 15.

[36] Griffin Dep. at p. 121.

[37] *Id.* at pp. 60-61.

[38] *Id.*

[39] *Id.* at p. 42; Dkt. 17, Ex. E.

[40] Griffin Dep. at pp. 30, 42.

[41] Devere Dep. at Ex. 3.

plaintiff included positive reviews of ICE and FSA.[42]

On May 25, 2011, SSA Greenwell contacted Griffin and requested plaintiff be removed from the contract.[43] Pursuant to the terms of the contract, FSA was required to remove an employee at ICE's request.[44] Instead of transferring plaintiff to a different client, FSA terminated plaintiff's employment for performance reasons.[45] After working to correct plaintiff's performance issues, Griffin testified he did not want to "send the problem somewhere else."[46]

Plaintiff filed a sexual harassment and retaliation claim against FSA after she was terminated on June 2, 2011. Plaintiff alleges that she was retaliated against for filing an EEOC complaint. FSA counters that she was terminated based on her continuous poor performance and professionalism, and not for any discriminatory reason.

FSA filed a motion for summary judgment on plaintiff's claims. In her response, plaintiff abandons her claim of sexual harassment and only addresses FSA's arguments related to her retaliation claim. Thus, the court will only address the merits of plaintiff's retaliation claim. FSA argues plaintiff's retaliation claim fails because her EEOC Charge did not constitute protected activity, there is no causal connection between her December 2009 EEOC Charge and her termination in June 2011, and insufficient evidence exists to establish pretext. In response, plaintiff contends the retaliation began after SSA Greenwell, a friend of SA Harrison, became her supervisor,

---

[42] *Id.*

[43] Griffin Dep. at Ex. 7.

[44] *Id.* at Ex. 5.

[45] Dkt. 17, Ex. C, Deposition of Calvin Dixon at p. 12.

[46] Griffin Dep. at p. 73.

6

and despite an exemplary record for six years, she was terminated within six months after settling her EEOC Charge with ICE.

## II. LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The moving party bears the initial burden of informing the court of evidence, if any, that demonstrates the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine dispute of material fact. *Id.* at 322. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). A dispute is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248. The substantive law determines the facts which are material in each case. Lastly, in determining whether a genuine dispute of material fact exists, the court views the evidence and draws inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

## III. ANALYSIS

Title VII's anti-retaliation provision protects an employee who is discriminated against because she has "'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry.*

*Co. v. White*, 548 U.S. 53, 59, 126 S. Ct. 2405 (2006) (quoting 42 U.S.C. § 2000e-3(a)). To establish a *prima facie* case of retaliation, plaintiff must show: (1) she engaged in protected activity; (2) she was subjected to an adverse employment action; and (3) a casual link existed between the protected activity and the adverse employment action. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). If the plaintiff successfully presents a *prima facie* case, the burden shifts to the employer to provide a legitimate, non-retaliatory reason for the adverse employment action. *Id.* After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation. *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 388-89 (5th Cir. 2007).

    i.    *Prima Facie Case*

FSA challenges plaintiff's ability to meet the first and third elements of her *prima facie* case. First, FSA argues that the EEOC Charge does not constitute protected activity because no reasonable employee could believe that SA Harrison's conduct was sexual harassment under Title VII. Generally, filing an EEOC complaint constitutes protected activity. *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 439 (5th Cir. 2005). However, the Supreme Court has yet to decide whether a plaintiff has to prove that the underlying conduct in the EEOC complaint, in fact, violated Title VII. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 269, 121 S. Ct. 1508 (2001) (noting the Ninth Circuit applied the anti-retaliation provision to protect an employee's opposition to practices that the employee reasonably believed were unlawful, but declining to rule on the "propriety of this interpretation"). Under current Fifth Circuit precedent, "a plaintiff can establish a prima facie case of retaliatory discharge . . . if he shows that he had a reasonable belief that the employer was engaged in unlawful employment practices." *Royal v. CCC&R Tres Arboles,*

8

*L.L.C.*, 736 F.3d 396, 401 n.2 (5th Cir. 2013); *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981). Sexual harassment is actionable under Title VII only if it is "so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment.'" *Breeden*, 532 U.S. at 270 (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 786, 118 S. Ct. 2275 (1998)). "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.* (citation omitted).

This court ultimately finds that plaintiff has failed to demonstrate a genuine factual dispute that FSA's termination was a pretext for discriminatory retaliation. Consequently, the court need not decide whether SA Harrison's conduct actually violated Title VII. However, given the personal nature and extreme inappropriateness of SA Harrison's isolated comment to plaintiff, the court will assume for the purposes of this opinion that an objectively reasonable person would classify his comment as sexual harassment.

FSA also maintains that no causal connection exists between the protected activity and the adverse employment action given the lapse of time between the filing of plaintiff's EEOC Charge and her termination. The causal standard at the *prima facie* stage is much less stringent than the but-for standard required to show pretext in the later analysis. *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 685 (5th Cir. 2001). It may be satisfied by a minimal showing that, at least, the person who subjected plaintiff to an adverse employment action was aware of the protected activity. *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003) ("[I]n order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity."). Additionally, to determine the existence of a causal link, courts have considered other factors, including: (1) the employee's past disciplinary record; (2)

9

whether the employer followed its policies and procedures in terminating the employee; and (3) the temporal proximity between the employee's protected conduct and termination. *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994).

Here, plaintiff had an exemplary record without any disciplinary history during six years of employment with FSA before filing her EEOC Charge and receiving complaints from SSA Greenwell. Plaintiff alleges that FSA did not follow its typical procedures with respect to her termination, but the evidence shows that Griffin was given the discretion to either counsel plaintiff or place her on a Performance Improvement Plan, and he chose to counsel plaintiff.[47] Plaintiff is also unable to make a strong temporal showing. Plaintiff's protected activity occurred in December 2009, and she was terminated in June 2011. However, Griffin was not made aware of the EEOC Charge until January 2011. Plaintiff maintains that proximity exists because the retaliation began within one month of her settlement with ICE. Immediately after the settlement, she claims that SA Harrison's close friend, SSA Greenwell, became her supervisor and began lodging complaints about her work performance. The lapse of time is not necessarily dispositive, and is only one of the factors the court is to consider. *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 43 (5th Cir. 1992). In light of plaintiff's unblemished record for six years prior to SSA Greenwell, an alleged friend of SA Harrison, becoming her supervisor, coupled with the adverse employment action occurring within six months of plaintiff's settlement with ICE and Griffin learning of her EEOC Charge, the court finds that plaintiff has met the lower causation standard required for her *prima facie* case.

---

[47] *Id.* at pp. 33-35, 38 (Griffin discussed performance issues with plaintiff pursuant to the counseling option available to him under the company policy and noted the deficiency in her performance appraisal.).

*ii.     Legitimate, Non-Discriminatory Reason*

Having met her burden establishing a *prima facie* case, the burden shifts to FSA to provide a legitimate, non-retaliatory reason for the adverse employment action. *Aryain v. Wal-Mart Stores Tex., L.P.*, 534 F.3d 473, 484 (5th Cir. 2008). The employer's burden is only one of production, not persuasion. *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). FSA has clearly met its burden of production. Specifically, FSA has presented competent summary judgment evidence that plaintiff repeatedly questioned the work given to her and disrupted the workplace by her reluctance to perform her job duties. Plaintiff admitted that she would question whether or not she was required to perform certain clerical and "agent-related" tasks under FSA's contract with the Department of Justice.[48] Despite Griffin's admonishments to cooperate with the agents and complete the assignments given to her, plaintiff's conduct persisted. Poor work performance is a legitimate, non-discriminatory reason for discharge. *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). Thus, FSA has demonstrated a legitimate, non-retaliatory reason for plaintiff's discharge.

*iii.    Pretext*

"If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (citation omitted). This burden is more stringent than that required of plaintiff at the *prima facie* stage. *Medina*, 238 F.3d at 685. Under this framework, the employee's ultimate burden is to prove that the adverse employment action taken against the employee would not have occurred "but for" the protected conduct. *Id.* Plaintiff meets this "but for" requirement by providing "'[p]roof that

---

[48] Devere Dep. at pp. 182-83, 194-95.

the defendant's explanation is unworthy of credence.'" *Pennington v. Tex. Dep't of Family & Protective Services*, 469 F. App'x. 332, 337 (5th Cir. 2012) (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147, 120 S. Ct. 2097 (2000)). This proof may consist of a combination of evidence of temporal proximity, statements indicating hostility for engaging in a protected activity, and other case-specific evidence that suggests that the employer's articulated reason is not true. *See Shackelford v. Deloitte & Touche, L.L.P.*, 190 F.3d 398, 409 (5th Cir. 1999) ("Indeed, the combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment."); *Shirley*, 970 F.2d at 43 (upholding a district court's finding of pretext when a supervisor routinely harassed an employee for filing an EEOC complaint). The plaintiff must reveal "a conflict in substantial evidence on the ultimate issue of retaliation in order to withstand a motion for summary judgment." *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122; *Medina*, 238 F.3d at 685.

Plaintiff claims she was retaliated against by FSA after she filed and settled her EEOC Charge with ICE. As evidence of pretext, plaintiff argues that following the settlement, SSA Schramm was replaced by SSA Greenwell, SA Harrison's former supervisor and friend. Further, ICE changed her work schedule and moved her office closer to SA Harrison's supervisor, so SA Harrison would have to pass her office more regularly. Plaintiff further claims that SA Ransbury assigned her tasks she had not been previously asked to do, and SSA Greenwell fabricated performance problems, even though she never refused to do the assigned work. While plaintiff only offers her subjective beliefs that this conduct by ICE was motivated by discriminatory retaliation,[49] the greater issue is that these were acts of ICE, not FSA.

---

[49] *Id.* at pp. 169, 213, 197.

In fact, the majority of plaintiff's evidence pertains to the conduct of ICE officials, as opposed to evidence regarding FSA's retaliatory conduct or motive. With respect to FSA, plaintiff testified that FSA personnel were very supportive and helpful when she decided to file her EEOC Charge.[50] Further, plaintiff agreed that Griffin was very understanding when she informed him about her previous EEOC Charge.[51] Griffin received numerous complaints regarding plaintiff's work performance, which was creating a disruption in the workplace according to her ICE supervisor.[52] Griffin discussed the problems with plaintiff and advised her to cooperate with the agents and perform the work assigned to her.[53] Despite Griffin's admonishments, plaintiff admitted she continued questioning agents when work was assigned to her, to the point that agents stopped giving plaintiff work.[54]

The evidence proffered by plaintiff relating specifically to FSA's retaliation was Griffin's alleged failure to "protect[ ]" plaintiff or "do[ ] something" when she reported her concerns about SSA Greenwell's reports of her poor work performance.[55] Essentially, plaintiff argues that Griffin failed to investigate her retaliation claim against SSA Greenwell. Griffin testified, however, that while he did not directly ask SSA Greenwell whether he was retaliating against plaintiff, he did

---

[50] *Id.* at p. 93.

[51] *Id.* at p. 215.

[52] Griffin Dep. at pp. 34-35.

[53] *Id.* (Griffin discussed performance problems with plaintiff on multiple occasions and even had to come to Houston to address the problem.).

[54] Devere Dep. at p. 249 (conceding "there was a lot of time that . . . Steven Greenwell had quit giving me work to do. He was assigning all this stuff to the new person, Amy.").

[55] *Id.* at pp. 274-75.

confer with SSA Greenwell about whether ICE was complying with the terms of the settlement agreement.[56] Ultimately, Griffin had to rely on SSA Greenwell's assessment of plaintiff's performance as her on-site supervisor.[57] When asked to remove plaintiff from the ICE contract, SSA Greenwell's complaints to Griffin and his superiors were substantiated by plaintiff's own admissions. Thus, even if plaintiff could establish that Griffin failed to adequately investigate her concerns regarding SSA Greenwell's retaliation, a lack of thoroughness or failure to conduct additional investigation does not constitute "significant evidence of pretext" in this case. *Bell v. Sw. Bell Telephone Co.*, 2002 WL 432973, at *5 n.7 (N.D. Tex. Mar. 15, 2012). Plaintiff also contends that FSA failed to use its progressive disciplinary procedure. But, as discussed previously, Griffin's decision to counsel plaintiff, instead of placing her on a Performance Improvement Plan was within his discretion.

The lapse of time between the filing of plaintiff's EEOC Charge and her termination also weakens her position that but for plaintiff filing an EEOC Charge she would not have been terminated. As previously noted, plaintiff's EEOC Charge was filed in December 2009, and she was terminated in June 2011, 18 months later. Generally, a lengthy time period between the protected activity and the adverse employment action will weaken the causal link. *See, e.g.*, *Ameen v. Merck & Co., Inc.*, 226 F. App'x 363, 376 (5th Cir. 2007) ("The timing of [the plaintiff's] termination, eleven months after she allegedly complained to [her supervisor], casts significant doubt on the claim that her termination was in retaliation for that complaint."); *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994) (noting that a time span of approximately ten months between

---

[56] Griffin Dep. at pp. 60-61.

[57] *Id.* at p. 11.

a complaint and discharge was insufficient to prove retaliation and, in fact, "suggests that a retaliatory motive was highly unlikely"). Plaintiff attempts to minimize the lapse in time by arguing that the retaliation did not begin until after the settlement with ICE in December 2010. While timing is not dispositive, an 18 month time lapse between plaintiff's EEOC Charge and the present allegation of retaliation is too attenuated to serve as a causal link between the protected activity and the adverse employment action.

Moreover, FSA has offered a legitimate, non-retaliatory reason for firing plaintiff. FSA has presented evidence of multiple discussions with ICE regarding plaintiff's continued perfomance issues. Plaintiff's admission in this regard and the various emails establish that FSA reasonably believed plaintiff continued to create work conflict at the ICE office when it terminated her. The issue is whether FSA's perception of plaintiff's performance, accurate or not, was the real reason for her termination. *Evans v. City of Houston*, 246 F.3d 344, 355 (5th Cir. 2001); *Long v. Eastfield Coll.*, 88 F.3d 300, 306 (5th Cir. 1996) (an employer's decision is protected from Title VII liability if it was made with reasonable belief and in good faith). While plaintiff maintains she never refused to do a job assignment, she admits to questioning agents when she was asked to perform work that she did not believe was in the purview of the contract.[58] She continued to question the necessity of performing certain "agent-related" tasks even after being told to do so by Griffin.[59] Plaintiff admits to this conduct, so plaintiff cannot show FSA did not genuinely believe she was engaged in the conduct forming the basis for her termination. Therefore, plaintiff has not rebutted FSA's basis for

---

[58] Devere Dep. at pp. 182-83, 194-95.

[59] *Id.* at pp. 212, 264 (Q: "So you did question whether or not you were supposed to be doing those tasks?" A: "Yes.").

termination and has failed to establish a conflict in substantial evidence that FSA's reason for her termination was a pretext.

### IV. CONCLUSION

Because plaintiff has presented no evidence creating a genuine issue of material fact for trial on her retaliation claim, FSA's motion for summary judgment (Dkt. 17) is GRANTED. Plaintiff's claims against defendant are hereby DISMISSED WITH PREJUDICE. The court will enter a separate final judgment in accordance with this memorandum opinion and order.

It is so ORDERED.

Signed at Houston, Texas on September 10, 2014.

_____
Gray H. Miller
United States District Judge